Dan REUST, Appellant,

v.

ALASKA PETROLEUM
CONTRACTORS,
INC., Appellee,

and

State of Alaska, Appellee/Intervenor.

No. S–12863.

Supreme Court of Alaska.

April 10, 2009.

Rehearing Denied May 15, 2009.

Arthur S. Robinson, Robinson & Associates, Soldotna, for Appellant.

Ruth Botstein, Assistant Attorney General, Talis J. Colberg, Attorney General, Anchorage, for Appellee/Intervenor State of Alaska.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

MATTHEWS, Justice.

This case is here for the second time.[1] After a jury awarded Dan Reust compensatory damages of $389,000 and punitive damages of $4.3 million in a retaliatory discharge suit against his employer, Alaska Petroleum Contractors (APC), the State was permitted to intervene to protect its interest in the punitive damages award.[2] The superior court reduced the punitive award to $500,000 using the "cap" provisions of AS 09.17.020(h) and required that half of the net award of punitive damages be paid to the State.[3] Reust and APC appealed. We held on appeal that (1) the provisions of AS 09.17.020 awarding fifty percent of punitive damages to the State and capping punitive damages are constitutional; (2) the State was properly permitted to intervene; (3) Reust's award of lost wages should be limited to three years after termination, rather than ten as the jury determined; and (4) the cap provisions of subsection .020(f) rather than (h) should have been used.[4] We remanded the case to the superior court with instructions to reduce the lost wages award to three years, to apply the punitive damages cap expressed in subsection .020(f), and to consider whether the recalculated punitive award would be excessive.[5]

After our opinion was published, Reust and APC entered into a settlement agreement. Under the agreement APC paid Reust $1 million[6] in exchange for a release of all claims. Reust agreed to defend and indemnify APC from any claims by the State for punitive damages, and agreed to place $200,000 of the settlement proceeds in the court registry so those proceeds would be available should the State assert any claim it might have for punitive damages. Reust and APC then filed a stipulation for dismissal in the superior court. The State objected to dismissal, noting that it was a party to the action, that it had not agreed to the stipula-

1. *See Reust v. Alaska Petroleum Contractors, Inc. (Reust I )*, 127 P.3d 807 (Alaska 2005).

2. *Id.* at 810–11.

3. *Id.* at 811. AS 09.17.020(f), (h) and (j) are involved in this case. These subsections provide:
   (f) Except as provided in (g) and (h) of this section, an award of punitive damages may not exceed the greater of
   (1) three times the amount of compensatory damages awarded to the plaintiff in the action; or
   (2) the sum of $500,000.
   . . . .
   (h) Notwithstanding any other provision of law, in an action against an employer to recover damages for an unlawful employment practice prohibited by AS 18.80.220, the amount of punitive damages awarded by the court or jury may not exceed
   (1) $200,000 if the employer has less than 100 employees in this state;
   (2) $300,000 if the employer has 100 or more but less than 200 employees in this state;
   (3) $400,000 if the employer has 200 or more but less than 500 employees in this state; and
   (4) $500,000 if the employer has 500 or more employees in this state.
   . . . .
   (j) If a person receives an award of punitive damages, the court shall require that 50 percent of the award be deposited into the general fund of the state. This subsection does not grant the state the right to file or join a civil action to recover punitive damages.

4. *See Reust I*, 127 P.3d at 817–18, 820–25.

5. *Id.* at 826.

6. The parties did not purport to allocate this sum between punitive and compensatory damages.

tion or the settlement, and that it had not received its share of punitive damages.

The superior court refused to dismiss the case. In making this ruling the superior court summarized Reust's position that the State should receive nothing as follows: "he argues that the case is in the same posture as it would have been if the parties settled before the jury delivered its verdict." The court rejected this argument, stating that

> [a]llowing plaintiffs to avoid dividing punitive awards with the State by negotiating a post-verdict settlement would frustrate the purpose of AS 09.17.020(j). The State gained an interest when the verdict awarding punitive damages was published. The Supreme Court's remand to determine the amount of punitive damages does not eliminate the interest.

After additional briefing, the superior court calculated punitive damages under the subsection .020(f)(1) cap to be $716,525.52,[7] determined that this amount would not be excessive, and ordered that half of this amount be paid to the State after adjustments for a pro rata portion of Reust's counsel's fees expended in obtaining the award. Subsequently, the court entered a final judgment granting the State $207,792.40 as its net share of punitive damages to be recovered "against Alaska Petroleum Contractors (or plaintiff pursuant to the plaintiff and defendant's settlement agreement)."

Reust appeals from this judgment.

He contends that the State has no interest in a punitive damages award until a formal judgment is entered, rather than, as the superior court held, when a verdict is returned. Reust also argues that once this court reversed the punitive damages judgment, the

State no longer had an interest in the settlement proceeds. We address these issues in turn.

## A. The State's Interest in a Punitive Damages Award Attaches when a Verdict Is Returned.

■ The first sentence of AS 09.17.020(j) grants the State a right to fifty percent of any punitive damages "award," and the second sentence provides that the subsection "does not grant the state the right to file or join a civil action to recover punitive damages." Taken as a whole, this subsection is most sensibly interpreted to mean that before a verdict is returned, the State may not intervene in a claim seeking punitive damages; however, once a verdict for punitive damages is returned, the State's interest in punitive damages comes into existence and the State may intervene to protect this interest. A number of reasons support this reading.

Variations of the word "award" are used throughout AS 09.17.020 to refer to a verdict[8] or to a verdict as adjusted by a cap on damages.[9] Thus, in subsection .020(j) the phrase "[i]f a person receives an award of punitive damages" refers to the receipt of a verdict and any adjustment of it necessitated by one of the cap subsections, and not to receipt of a judgment nor, as Reust also suggests, receipt of money paid pursuant to a judgment.

We stated in *Reust I:* "[I]t appears that the state should always be permitted to intervene when there is any dispute about how a punitive damages award is to be allocated."[10] Because this observation was made in the context of an intervention request that

---

**7.** The subsection .020(f)(1) cap is three times compensatory damages. The superior court computed compensatory damages as required in *Reust I* to be $238,841.84.

**8.** See for example, AS 09.17.020(a): "If punitive damages are allowed, a separate proceeding under (c) of this section shall be conducted before the same fact finder to determine the amount of punitive damages to be *awarded.*" (Emphasis added.) See also subsection .020(b): "The fact finder may make *an award* of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct (1) was

outrageous, including acts done with malice or bad motives; or (2) evidenced reckless indifference to the interest of another person." (Emphasis added.)

**9.** See subsection .020(f): "Except as provided in (g) and (h) of this section, *an award* of punitive damages may not exceed the greater of (1) three times the amount of compensatory damages awarded to the plaintiff in the action; or (2) the sum of $500,000." (Emphasis added.)

**10.** *Reust I,* 127 P.3d at 825.

was made before a judgment was entered, it supports the conclusion we reach today.

It is hard to think that any other rule would make sense. If by the device of a post-verdict settlement a plaintiff could eliminate the need to recognize the State's interest in punitive damages, such settlements would almost always be accomplished and the State would almost never receive its share of punitive damages. The interpretation advocated by Reust would, in other words, make subsection .020(j) nearly meaningless. In *Reust I* we indicated that the purposes of subsection .020(j) were to reduce the incentive for plaintiffs to pursue punitive damages claims and encourage pretrial settlements, "since the state only shares in punitive damages when an award is made." [11] We also took note of the purpose of "[i]ncreasing state revenues by allocating a portion of punitive damages awards to the state based on the analogy between such awards and civil and criminal fines" that underlies subsection .020(j).[12] These purposes would be frustrated, rather than achieved, if we were to adopt Reust's position.

### B. The State's Interest in the Punitive Damages Award Was Not Eliminated by *Reust I.*

■ Did our decision in *Reust I* return this case to its pre-verdict status in which Reust would be free to settle without any need to recognize the State's interest? We answer in the negative for the following reasons.

Our decision did not reverse the jury's determination that punitive damages should be awarded; nor did it require a new jury determination as to what the amount of punitive damages should be. Instead, we required that the applicable cap on punitive damages be calculated.[13] This calculation entailed the use of the formula set out in subsection .020(f)(1)—three times the award of compensatory damages.[14] Our remand also required the recalculation of compensatory damages.[15] But this too was accomplished based on the initial verdict without the need for a new trial.[16] Because no new trial was required, the State's interest that attached when the verdict was announced remained in effect. It follows that Reust could not eliminate the State's interest by settling with APC.[17]

### C. Post–Judgment Interest and Cost Adjustments.

■■ Reust's final point on appeal is that post-judgment interest should be set at the rate of interest that was in effect at the time of the first judgment, 4.25%, rather than the

---

11. *Id.* at 822 (quoting *Anderson v. State ex rel. Cent. Bering Sea Fishermen's Ass'n (Anderson II)*, 78 P.3d 710, 717 (Alaska 2003) (Matthews, J., dispositional plurality opinion)). In *Reust I* we stated:

   [A]llocating half of all punitive damage awards to the state will reduce the incentive for plaintiffs to pursue punitive damages claims. The statute will also encourage plaintiffs to settle their cases since the state only shares in punitive damages when an award is made. These incentives could reduce both the overall number of punitive damage claims as well as the number of punitive damage claims that actually go to trial. This effect could reasonably be expected to have a moderating influence on liability insurance premiums. Further, the incentive to settle punitive damage claims could reduce the length and complexity of litigation, thereby reducing the overall cost of litigation. *Id.* (quoting *Anderson II*, 78 P.3d at 717) (alteration in original).

12. *Id.* (quoting *Anderson II*, 78 P.3d at 718) (alteration in original).

13. *See id.* at 824–26.

14. *Id.*

15. *Id.* at 826.

16. Whether a new trial on punitive damages was required is important because of the purposes of subsection .020(j). The need for a new trial would mean that the subsection .020(j) incentives to settle without a trial could still meaningfully operate and potentially achieve significant savings for the parties and the court system. But as no new trial was required, the incentives could no longer operate.

17. Reust also argues that awarding a share of punitive damages to the State is an unconstitutional taking of his property, in violation of the takings clauses of the federal and state constitutions, and also violates his due process rights secured under the federal and state constitutions. Both these claims have already been decided in *Reust I*. No comprehensible new claims based on the facts following remand have been asserted.

rate on judgments when the judgment after remand was issued, 9.25%. This argument is based on Appellant Rule 509, which provides:

> If a judgment for money in a civil case is affirmed, interest at the rate prescribed by law shall be payable from the effective date of the judgment of the trial court. If in a civil case a judgment is modified or reversed with directions that a judgment for money be issued by the trial court, interest on the new judgment at the rate prescribed by law shall be payable from the effective date of the prior judgment which was modified or reversed.

Reust's point is well taken and the State concedes it. The State also suggests that in light of our decision in *State v. Carpenter*,[18] a pro rata share of Reust's costs, in addition to attorney's fees, should have been deducted from the State's share of punitive damages. We agree. As we held in *Carpenter*, "[i]n order to ensure that the state is not unjustly enriched at the expense of litigants, we read AS 09.60.080 to require a pro rata deduction of costs from the state's share of the punitive damages award."[19]

For the above reasons, we conclude that this case should be remanded to the superior court with instructions to modify the judgment by changing the post-judgment rate of interest on the judgment to 4.25% and by deducting Reust's pro rata share of costs attributable to the State's portion of the award. Except for these changes, the judgment should be affirmed.

AFFIRMED in part and REMANDED for modification.

---

**18.** 171 P.3d 41(Alaska 2007).

**19.** *Id.* at 70.